hYELVERTON, Judge.
Summary judgment was granted dismissing a claim on the basis of prescription. William P. Mills III wrote a check to Ruffin T. Lowry on September 16,1985, for $15,000. Mills testified by deposition that the purpose of the check was to pay a personal obligation incurred in 1983. Lowry never cashed the check. Lowry sued Mills in 1994 for the $15,000. Mills moved for summary judgment on the basis of prescription of 10 years. The trial court granted summary judgment and dismissed the suit. Lowry appealed. We reverse and remand. The giving of the check was anj^aeknowledgment. Whether it was also a novation is an unresolved factual *803 dispute. Summary judgment was inappropriate.

SUMMARY JUDGMENT FACTS

Sometime in early 1983, Lowry and Mills entered into a verbal agreement whereby Mills promised to purchase from Lowry 50% of Lowry’s interest in a sand and gravel business. Although neither party can recall the exact date of the agreement, both admit two essential points: (1) the existence of a verbal agreement, and (2) the perfection of the agreement before the venture incorporated. Lowry incorporated the sand and gravel business on April 8, 1983, and named it the General Sand Co., Inc. The corporation later dissolved on May 23, 1985. Before entering into the 1983 sand and gravel verbal agreement, the parties had an ongoing business relationship. They co-owned real estate and jointly participated in oil and gas ventures.
On September 16,1985, Mills wrote Lowry a check for $15,000. This was more than two years after perfection of the verbal agreement and several months after dissolution of the corporation. Lowry never cashed the check. Both parties admit that the $15,000 cheek corresponded exactly to Mills’ liability resulting from the 1983 verbal agreement. As to what the issuance of the check was to accomplish, the parties have conflicting explanations. No written evidence exists to verify the circumstances surrounding the cheek issuance; nor does the check itself contain a written notation as to its purpose.
Lowry claims that Mills issued the check to acknowledge the $15,000 debt that he owed on the sand and gravel venture. In his affidavit, Lowry states, “The | acheck was never intended to be cashed, but only to acknowledge the obligation to pay the $15,000.” The parties “had other things going on,” in addition to the 1983 agreement, that might involve a future accounting between them. For this reason, according to Lowry, he simply put the check in a drawer without ever cashing it. Contradicting Lowry’s explanation, Mills claims that he issued the check to extinguish his liability and that he repeatedly requested the plaintiff to cash it.
On February 25,1994, Lowry filed this suit to enforce the agreement. The suit was filed more than ten years after the 1983 verbal agreement and more than five years after Mills issued the check. However, the suit was filed within ten years from the September 16, 1985 check issuance. Subsequently filing a motion for summary judgment, Mills argued that as a matter of law the action on the contract as well as the cheek is prescribed. The trial judge granted Mills’ motion for summary judgment.

ARGUMENTS

Lowry argues that the ten-year prescriptive period applicable to the personal action was interrupted by Mills’ $15,000 cheek issued on September 16, 1985. In effect, the check (he argues) served as an acknowledgment under La.Civ.Code art. 3464: “Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.” The effect of an interruption is governed by La.Civ. Code art. 3466: “If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption.” Thus, according to the Civil Code, the approximate two and one-half year's that had accrued from the date of the oral agreement in early 1983 to Lthe date of the check in September 1985 would have been erased. The ten-year prescriptive period would begin anew from September 16, 1985, the cheek date. Therefore, the February 25, 1994 filing date is timely, and the action is not barred.
Mills argues that the check, a negotiable instrument, accomplished a substitution of his underlying obligation to buy 50% of Low-ry’s interest in the venture. Thus, the ten-year prescriptive period applicable to the 1983 oral contract was not interrupted. And the five-year prescriptive period applicable to negotiable instruments began accruing on September 16, 1985, the date of the check. Both actions, on the contract and on the negotiable instrument, were barred when the plaintiff filed suit in 1994.

OPINION

In this case, summary judgment is improper because the parties dispute a mate *804 rial fact regarding the significance of the $15,000 cheek and the action is not prescribed as a matter of law. When considering the correctness of summary judgment, appellate courts review de novo the trial judge’s findings of fact as well as law. Schroeder v. Board of Sup’rs, 591 So.2d 342 (La.1991). The trial judge in this ease found that the $15,000 check dated September 16, 1985, constituted an acknowledgment of the debt as well as a substitution of the underlying contractual obligation. Relying on Louisiana Health Service v. McNamara, 561 So.2d 712 (La.1990), the lower court seemed to conclude that the parties to a contract will always accomplish an objective novation anytime the debtor issues a check. Apparently, this novation occurs regardless of the circumstances surrounding the issuance of the check or the intentions of the parties. Once the lower court ^determined that a substitution occurred, it held that the original prescriptive period of ten years could not be interrupted. In other words, the more than two years preceding the acknowledgment (the issuance of the cheek) would not be erased, and the counting of the ten-year prescriptive period applicable to the contract would begin in 1983, the date of the oral agreement, instead of 1985 when the check was issued.
The lower court’s holding did not take into account the codal requirements for determining if a novation had occurred. Furthermore, the McNamara ease does not dictate that the check be automatically considered a substitution or “implicit novation.” McNamara, 561 So.2d 712. In McNamara, the supreme court first noted that in “an ordinary case” an acknowledgment does interrupt the prescriptive period thereby canceling the time that has already run. Id. The court went on to state:
In some cases, however, the debtor not only acknowledges the existence of the debt, but he also substitutes a new obligation with a longer prescriptive period in place of the original obligation.... Our courts have generally interpreted acknowledgment by notes or checks to constitute implicit novations of the obligations whenever this interpretation is favorable to the creditor. Id. at 719. (Emphasis added). If it is determined that an implicit novation will benefit the creditor, then the proper prescriptive period after an acknowledgment is “the longer of either the original prescriptive period or that applicable to a substituted obligation.” Id.
Unlike the several cases that the McNamara opinion cited as examples of the use of an implicit novation, the creditor in our present case does not benefit from a finding that the acknowledgment constituted a substitution. See M.H. Nahigian, Inc. v. Haddad, 205 La. 1009, 18 So.2d 598 (1944); Roper v. Newman, 344 6So.2d 117 (La.App. 2 Cir. 1977). In both of these cases cited in the McNamara opinion, the courts found that the acknowledgments by negotiable instruments constituted implicit novations because the original obligations, subject to three-year prescriptive periods, would have been prescribed even if interrupted by the acknowledgments. However, the actions were not barred when the courts substituted the five-year prescriptive periods for the instruments. Thus, the threshold question in the case before us is whether the issuance of the check actually effected a novation as governed by La.Civ.Code arts. 1879-1881. These articles governing novation should be read in pari materia with the articles governing interruption by acknowledgment.
According to La.Civ.Code art. 1880, a no-vation “may not be presumed” and “the intention to extinguish the original obligation must be clear and unequivocal.” La.Civ. Code art.1881 states that an objective novation may occur in two ways: (1) “when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation ...” or (2) “when the parties expressly declare their intention to novate an obligation.” (Emphasis added). Furthermore, the Civil Code specifies that “[mjere modification of an obligation, made without intention to extinguish it, does not effect a novation,” with “the issuance or renewal of a negotiable instrument ...” as one example of a mere modification. (Emphasis added). La.Civ.Code art. 1881.
*805 The Louisiana Supreme Court has declared that the intent of the parties is the most important factor in deciding whether a novation has occurred. Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987). The court may never presume a novation. Id. The parties have accomplished a novation “where the intent of the 17parties, the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement reveal a desire to effect a novation.” Id. at 360. In Sterlington Bank v. Terzia Dumber & Hardware, Inc., 146 So.2d 233 (La.App. 2 Cir.1962), the second circuit concluded that a novation did not occur when an employer gave his employee a check to satisfy the employer’s obligation to pay wages. The court held that the “mere giving” of the instrument was not sufficient to accomplish a novation without the clear intention to novate that “may be gleaned from the acts of the parties, as well as the terms of the agreement.” Id. at 236, [quoting Rains v. Jones, 152 So. 356 (La.App. 2 Cir.1934) ]. However, the court did state that the check was evidence of the amount of the indebtedness. Unlike Lowry, who never cashed the $15,000 check, the creditor in Sterlington Bank had even negotiated the checks to other holders and received payment in full.
According to the express terms of the Civil Code Articles governing novation and the jurisprudence, the parties in this case did not effect a novation unless they entered into an agreement to novate or expressly declared their intention to novate. Whether the parties entered into an agreement to extinguish the original obligation and substitute it with a negotiable instrument is an unresolved, contested issue of fact in this ease. The parties currently dispute whether the $15,000 check was intended to extinguish the underlying obligation, or simply to acknowledge that obligation. Lowry’s failure to cash the check suggests that, at the very least, Lowry did not intend to extinguish the underlying obligation.
Although the issuance of the cheek might not constitute a novation, the check does, nevertheless, constitute an acknowledgment sufficient to interrupt prescription under La.Civ.Code arts. 3464 and 3466. In Lima v. Schmidt, 595 So.2d 8624, 633 (La.1992), the Louisiana Supreme Court overruled prior jurisprudence that imposed an intent requirement for an effective acknowledgment: “We find the imposition of this intent requirement inconsistent with the doctrinal writings and the public policy permitting acknowledgment of ordinary obligations on an informal basis.” A tacit acknowledgment may occur from unilateral acts of the debtor such as when the debtor simply “lulls the creditor into believing he will not contest liability.” Id. at 634. No particular form is required. The court sums up acknowledgment as follows: “[a]n acknowledgment is a simple admission of liability resulting in the interruption of prescription ... and may be made on an informal basis.” Id. The defendant’s issuance of the $15,000 check could constitute an acknowledgment without the necessity of proving the debtor’s intent to interrupt prescription. Whereas a novation requires an agreement (i.e., mutual consent, offer, acceptance) and clear intent, for an effective acknowledgment the parties need not prove an agreement or intent.
For the above reasons, the summary judgment dismissing the suit is reversed, and the ease is remanded for further proceedings. Costs of this appeal will be paid by the defendant-appellee.
REVERSED AND REMANDED.